IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CHRISTOPHER J. COVEY
and LELA G. COVEY,

        Plaintiffs,

v.                                                                            Civil Action No. 5:12cv37
                                                                               (Judge Stamp)

ASSESSOR OF OHIO COUNTY, et al.,

        Defendants.


## ORDER DENYING PLAINTIFFS' MOTION TO REMAND AND REPORT AND RECOMMENDATION THAT CASE BE DISMISSED

### I. INTRODUCTION

On October 20, 2011, the *pro se* Plaintiffs filed a complaint against the above-named Defendants pursuant to 42 U.S.C. § 1983 in the Circuit Court of Ohio County, West Virginia, alleging various civil rights violations, and also alleging various other state law causes of action. On March 9, 2012, Plaintiffs filed a Petition with the United States District Court for the Northern District of West Virginia to remove this action from Circuit Court. Thereafter, on March 13, 2012, Defendants filed a Motion to Dismiss Plaintiffs' Complaint, or in the Alternative, Motion to Strike All Redundant Paragraphs of Plaintiffs' Complaint and a Second Motion to Dismiss whereby it adopted all the arguments made in the Motion to Dismiss filed in case number 5:11-cv-147, also filed by the Coveys. Then, on April 9, 2012, Plaintiffs filed a Petition to Remand. On April 24, 2012, Defendants filed responses in opposition to Plaintiffs' motion to remand.

1

## II. PLEADINGS

*A. The Complaint*

In their complaint, Plaintiffs allege that on October 21, 2009, Roy Crews, an employee of the Ohio County Assessor's office entered Plaintiffs' property for property tax purposes despite posted no trespassing signs. Upon entry onto the property, Roy Crews saw marijuana plants growing in plain view on the outdoor back patio of Plaintiffs' home, and, after seeing the drugs, he contacted Patrick Butler with the Ohio County Sheriff's Department to give him the information. Based on the call, the Ohio County Sheriff's Department sent officers Alex Espejo and Robert Manchas to Plaintiff's home. After witnessing the marijuana plants and obtaining an admission by one of the plaintiffs about drug paraphernalia inside the home, Officer Espejo left to obtain a search warrant to conduct a search of the home, leaving Deputy Ron White on the scene.

In the meantime, Mrs. Covey returned home and was placed in handcuffs by one of the officers. Officer Espejo then returned with a search warrant and the officers conducted a search of the home. Plaintiff Christopher Covey and Plaintiff Lela Covey were arrested, placed in squad cars, and taken to jail to be processed. Later that evening the Plaintiffs' son returned home and noticed officer Espejo was still at the home searching Mrs. Covey's computer. Also, while the Plaintiffs' son was present, two unnamed officers of the Ohio County Dog Warden entered the residence and seized the family's raccoon.

*B. Defendants' Motions*

Defendants, the Assessor of Ohio County, Patrick Butler, Roy Crews, Nelson Croft, DLG, Alex Espejo, HNK, Kathie Hoffman, Doug McCrosky, Ohio County Animal Shelter, Ohio County Sheriff, Nichole Seifert, Unknown Assessor, Unknown Dog Wardens, and Ron White, in

support of their First Motion to Dismiss Plaintiffs' Complaint, or in the Alternative, Motion to Strike All Redundant Paragraphs of Plaintiffs' Complaint argue that:

1. Plaintiffs have also filed a civil action against the above-named defendants in case number 5:11-cv-147, and that each of the forty-two paragraphs in that complaint are contained in the instant complaint.

Therefore, they ask the Court to dismiss the complaint or strike all redundant paragraphs. On March 30, 2012, Defendant Ohio Valley Drug Task Force joined in this Motion. The above named defendants argue in support of their Second Motion to Dismiss that:

1. The individual officers named are immune from the state law claims under the West Virginia Government Tort Claims and Insurance Reform Act.

2. Plaintiffs' are not entitled to recovery under a theory of *respondeat superior* for claims arising under 42 U.S.C. §1983.

3. Plaintiffs' false imprisonment claim cannot stand because the individuals named were acting within in the scope of their employment thereby giving them immunity.

4. Plaintiffs' complaint should be dismissed in its entirety as a matter of law pursuant to West Virginia Code §29-12A-6(d) because it improperly specified in the demand a monetary amount for damages.

5. Plaintiffs' claims for punitive damages should be dismissed as a matter of law pursuant to West Virginia Code §29-12A-7(a) because in any civil action involving employees of a political subdivision as a party defendant, an award of punitive damages is prohibited.

6. Plaintiffs' complaint should be dismissed as a matter of law for failure to serve Defendants within the time limits prescribed by Federal Rule of Civil Procedure 4(m).

*C. Plaintiffs' Replies*

In Plaintiffs' Opposition of Defendants [sic] Motion to Dismiss Plaintiffs' Complaint or in the Alternative, Motion to Strike All Redundant Paragraphs of Plaintiffs [sic] Complaint, Plaintiffs argue that:

1. The state court should retain jurisdiction over the case.

2. Plaintiffs have stated a claim upon which relief can be granted.

3. Plaintiffs should be granted reasonable time to cure insufficiencies of process.

4. If there is any technical mistake in the demand for damages, they should be granted leave to amend the complaint.

5. Plaintiffs' supervisor liability claim can stand because of Sheriff Butler's role as a causal link in the chain of events.

In Plaintiff's Memorandum in Support of Opposition to Dismiss Defendant Ohio Valley Drug Task Force, Plaintiffs reiterate the arguments set forth above.[1]

### *D. Plaintiffs' Motion to Remand*

In Plaintiffs' Petition to Remand, Plaintiffs argue that:

1. At least one defendant is a citizen of the same state as the Plaintiffs, so the complete diversity requirement is not met, and the case should be remanded back to the Circuit Court of Ohio County, West Virginia.

2. Civil action number 5:12-cv-37 is not the same as civil action number 5:11-cv-147 because different defendants are named.

In Defendants' Response to Plaintiffs' Petition to Remand, Defendants argue that:

1. Pursuant to 28 U.S.C. § 1331, District Courts have jurisdiction over all civil actions arising under the Constitution, laws or treaties of the United States, and Plaintiffs' complaint meets this requirement since it arises under 42 U.S.C. § 1983 and under the United States Constitution.

2. The presence of related state law claims has no bearing on this Court's jurisdiction.

Therefore, Defendants argue that the action has been properly removed from state court to this Court. On April 24, 2012, Defendant Ohio Valley Drug Task Force joined in this Motion.

### I.     **STANDARD OF REVIEW**

### *A. Motion to Dismiss*

---

[1] Plaintiffs did not file a response to the Ohio Valley Drug Task Force motion to dismiss in the instant case; however, in the companion case, 5:11-cv-147, Plaintiffs did file a response to the same. (Doc. 41.)

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. *Advanced Health-Care Services, Inc. v. Radford Community Hosp.*, 910 F.2d 139, 143 (4th Cir. 1990). Moreover, the Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, although a complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). To survive dismissal for failure to state a claim, the complaint must raise a right to relief that is more than speculative. *Id*. In other words, the complaint must contain allegations that are "plausible" on their face, rather than merely "conceivable." *Id*. at 555, 570. A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

### B. Motion to Remand

The removing party must plead a basis for federal jurisdiction. *Strawn v. AT & T Mobility, LLC*, 530 F.3d 293, 296-98 (4th Cir. 2008). Once challenged, the party bears the burden of proving that the federal court has jurisdiction over the action. *Id*. To avoid "interfere[nce] with matters properly before a state court," all doubts about the propriety of removal must be resolved in favor of remanding the case. *Richardson v. Phillip Morris, Inc.*, 950

F.Supp. 700, 701 (D.Md. 1997) (internal quotations omitted). "If federal jurisdiction is doubtful, remand is necessary." *Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir. 1994).

## II. ANALYSIS

*A. Motion to Remand*

Before addressing the merits of a motion to dismiss, the Court must first determine whether it has subject matter jurisdiction over the cause of action. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998). Therefore, it is proper for the Court to decide the Motion to Remand prior to deciding the Motions to Dismiss. 28 U.S.C. § 1331 gives federal courts original jurisdiction over "all civil actions arising under the Constitution, laws or treaties of the United States," and the governing provision of the federal removal statute allows a defendant to remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). In this case, Plaintiffs have brought federal claims pursuant to 28 U.S.C. § 1983 and pursuant to *Bivens*.

> [The] federal claims suffice to make the actions 'civil actions' within the 'original jurisdiction' of the district courts for purposes of removal. . . . Nothing in the jurisdictional statutes suggest that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'

*Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 166 (1997)(citation omitted). Finally, although Plaintiffs argue that the Motion for Remand should be granted because the complete diversity requirement is not met, Plaintiffs argument overlooks the fact that Defendants removed the action based on federal question jurisdiction, not on diversity jurisdiction. Thus, the diversity

6

of the parties involved has no bearing on the Motion to Remand. Accordingly, this Court finds that the case was properly removed to Federal Court and the Motion to Remand is **DENIED**.

*B. Motions to Dismiss*[2]

Now that the Motion to Remand has been denied, the Court can move on to consider Defendants' Motions to Dismiss. Defendants argue that the instant complaint mirrors the complaint filed in case number 5:11-cv-147 and therefore it should be dismissed or the redundant paragraphs should be struck. Before addressing the merits of the motion to dismiss, the Court will first note that, although there may be some support for striking an entire pleading under Fed. R. Civ. P. 12(f), *see In re Merrill Lynch & Co., Inc.*, 305 F. Supp. 2d 323, 325 (S.D.N.Y 2004), motions to strike are typically not favored when there is a presence of legal or factual issues. *See e.g. Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819 (6th Cir. 1953); *Salcer v. Envicon Equities Corp.*, 744 F.2d 935 (2d Cir. 1984). Therefore, the Court sees the better course as deciding the motion on its merits.

1. *Count Three*

Count Three of Plaintiffs' complaint alleges a cause of action pursuant to 42 U.S.C. § 1983 against the Ohio County Sheriff's Department and its officers, the Assessor of Ohio County and its Officers, and the Ohio County Animal Shelter and its Officers. Plaintiffs allege that the named defendants acted with deliberate indifference to their civil rights in committing an unreasonable search and seizure.

As a preface, state officials sued in their official capacities do not constitute "persons" within the language of 42 U.S.C. § 1983. Official capacity claims "generally represent only

---

[2] Because the instant complaint, which, as discussed, was removed to this court from state court, mirrors the federal complaint filed by the Plaintiffs in 5:11-cv-147, the discussion here will be almost exactly the same as in that case.

another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citation and quotations omitted). Therefore, suits against state officials in their official capacities should be treated as suits against the state. *Id.* at 166.

In order for the governmental entity to be a proper party of interest, the entity's policy or custom must have played a part in the violation. *Id.* (citing *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Thus, it is possible that a governmental entity could be liable if it had a policy or custom of failing to train its employees, and that failure amounted to "deliberate indifference" causing the constitutional violation. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). However, in this case, Plaintiffs fail to assert that a policy or custom played a part in the alleged violation of their constitutional rights. In fact, Plaintiffs fail to mention any policy at the Ohio County Sheriff's Department, the Ohio County Animal Shelter, or the Ohio County Assessor's office relating to this incident. Accordingly, claims against these Defendants should be dismissed.

Plaintiffs do state in their complaint, however, that "these Defendants are being sued in their *individual and personal* capacities." State officials are considered "persons" within the meaning of § 1983 when sued in their individual capacities, and as such may be held personally liable for damages. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991). These claims do not require proof of any policy or custom of the entity that violated Plaintiffs' rights, and qualified immunity may be raised as a defense. Plaintiffs allege that the tax assessor and sheriff's office conducted unlawful searches of their home under the Fourth Amendment, and a brief discussion of Fourth Amendment law shows why these claims must be dismissed.

A Fourth Amendment search only occurs where a reasonable expectation of privacy exists under the two-part test delineated in *Katz* where (1) the individuals have shown a

subjective expectation of privacy in the object of the challenged search, and (2) society is willing to accept this expectation as reasonable. *Katz v. United States*, 389 U.S. 347 (1967). The first person to witness the marijuana growing at the Covey's home was the state tax assessor. The Sixth Circuit addressed a citizen's reasonable expectation of privacy when a municipal tax assessor enters the curtilage of the home, holding that "a property assessor does not conduct a Fourth Amendment search by entering the curtilage for the tax purpose of naked-eye observations of the house's plainly visible exterior attributes and dimension." *Wildgren v. Maple Grove Twp.*, 429 F.3d 575 (6th Cir. 2005). The same holds true here where nothing unduly intrusive occurred: the assessor used ordinary methods to observe the house; there is no evidence he craned his neck or was straining to observe anything; and although Plaintiffs allege that he did open the door, it was only to drop a pamphlet inside and the marijuana he observed was in the backyard, not inside. Accordingly, Plaintiffs had no objectively reasonable expectation of privacy, and no search occurred.

After the Assessor viewed marijuana growing in Plaintiffs' backyard, he made a call to the Sheriff about what he had seen on the property, and officers were sent to the property, presumably to conduct a "knock and talk." The Fourth Circuit has held that "[t]he Fourth Amendment does not prohibit police, attempting to speak with a homeowner, from entering the backyard when circumstances indicate they might find him there." *Alvarez v. Montgomery Cnty*, 147 F.3d 354, 356 (4th Cir. 1998). "[T]his circuit has permitted law enforcement officers to enter a person's backyard without a warrant when they have a legitimate law enforcement purpose for doing so." *Id*. at 358. *United States v. Bradshaw*, 490 F.2d 1097, 1100 (4th Cir. 1974).

In this case, according to the complaint, Mr. Covey was outside working at his workbench in the walk-out basement patio area when officers arrived. Based on these facts, the

9

officers were justified in approaching Mr. Covey in the backyard since it was clear he was not in the house. It was then that the officers noticed the marijuana plants in plain view on Plaintiffs' back patio. The officers then had probable cause to arrest Mr. Covey, and had probable cause to seek a search warrant for the premises.

In sum, there were no constitutional violations associated with the tax assessor approaching the Covey's home or providing a tip to the sheriff's office about what he saw. Similarly, there were no constitutional violations on the part of the sheriff's office by acting on the tip to approach the Covey's home. Once there, and without searching the residence, the officers saw in plain view the marijuana in the backyard, leading to probable cause for a search warrant and the arrest of the Coveys. Accordingly, the claims against the assessor's and sheriff's offices must be dismissed.

As to the actions of the dog wardens in seizing the raccoon, it is unquestionable that there was a meaningful interference with Plaintiffs' possessory interests in their pet raccoon. *See Van Patten v. City of Binghamton*, 137 F. Supp. 2d 98, 107 (N.D.N.Y. 2001). But, a seizure alone does not constitute a Fourth Amendment Violation; only seizures that are unreasonable under the circumstances will violate the Fourth Amendment. *Soldal v. Cook County, Illinois*, 506 U.S. 56 (1992). When the state makes a warrantless seizure, courts must "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place*, 462 U.S. 696, 703 (1983).

In this case, the state's interest in promoting the public health and welfare was implicated when it was discovered that Plaintiffs were keeping an undomesticated animal in their home. *See Brown v. Muhlenberg Twp.*, 269 F.3d 205, 210-11 (3rd Cir. 2011). In addition to the public

health concerns related to diseases that are raised by the keeping of wild animals, the two who were presumably charged with its care had just been taken into custody, thereby leaving the animal in an abandoned state. Under this set of circumstances, the Court finds that the dog wardens' seizure of the raccoon cannot be taken as an unreasonable seizure within the meaning of the Fourth Amendment. Since no constitutional violations have occurred, a cause of action under § 1983 cannot stand, and the motion to dismiss must be granted with respect to these Defendants.

Next, as to Defendant Doug McCrosky, supervisor of the Ohio County Animal Shelter, Sheriff Patrick Butler, Kathie Hoffman, Head Assessor, Roy Crews, Field Deputy, and the Assessor of Ohio County, they all appear to have been named in this suit merely because of their position as supervisors. There is no *respondeat superior* liability under § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978*)*; *Vinnedge v. Gibbs*, 550 F. 2d 926, 928 (4th Cir. 1997). Instead, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *Vinnedge*, 550 F.2d at 928. When a supervisor is not personally involved in the alleged wrongdoing, he may be liable under §1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. *Fisher v. Washington Metro. Area Transit Auth.*, 690 F. 2d 1113 (4th Cir. 1982). Similarly, a supervisor may be liable under § 1983 if the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal

link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.), *cert. denied*, 513 U.S. 813 (1994).[1]

In this case, as detailed in the preceding analysis, Plaintiffs have suffered no constitutional injuries at the hands of any of these Defendants' subordinates. A Section 1983 claim cannot be maintained against a governmental employer in a case where there is no underlying constitutional violation by the employee. See *Grayson v. Peed*, 195 F.3d 692, 697 (1999) ("As there are no underlying constitutional violations by any individual, there can be no municipal liability."); *Temkin v. Frederick Cnty Comm'rs*, 945 F.2d 716, 724 (4th Cir. 1991) ("A claim of inadequate training under section 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation on the part of the person being supervised."). Thus, the claims in Count Three against the supervisor Defendants should be dismissed.

2. *State Law Claims: Counts One, Two, Four, and Five*

Finally, Plaintiffs also assert state law causes of action for negligent training and supervision, intentional infliction of emotional distress, false arrest and imprisonment, and violations of Articles 3-6 and 3-10 of the West Virginia Constitution. As outlined in the preceding analysis, the undersigned recommends dismissal of Plaintiffs' claims under §1983. Accordingly, there are only Plaintiffs' four remaining state law claims at issue in this suit.

As a rule, supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they "are so related to claims in the action within

---

[1] "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." *Shaw*, 13 F.3d at 799. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" *Id.*

such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a); *Wisconsin Dep't of Corrections v. Schacht*, 524 U.S. 381, 387 (1998). Discretion rests with the district court to decline to exercise supplemental jurisdiction when:

(1) The claim raises a novel or complex issue of state law,

(2) The claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) The district court has dismissed all claims over which it has original jurisdiction, or

(4) In exceptional circumstances, there are other compelling reasons for declining jurisdiction

28 U.S.C. § 1367(c).

"It has been consistently recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. . . . [I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Therefore, in light of the recommended dismissal of the federal claims at this early stage, the undersigned also recommends that the Court decline to exercise supplemental jurisdiction over Plaintiffs' state law claims, and, instead should dismiss those claims without prejudice.

## V. RECOMMENDATION

The undersigned recommends that the claims brought pursuant to § 1983 be **DISMISSED WITH PREJUDICE** for failure to state a cause of action. Furthermore, the undersigned recommends that the Court decline to exercise supplemental jurisdiction over the state law claims, and that they be **DISMISSED WITHOUT PREJUDICE**.

Within fourteen [14] days of the filing of this recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to Senior Judge Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiffs by certified mail, return receipt requested, to their last known address as reflected on the docket sheet.

DATED: December 14, 2012              /s/ *James E. Seibert*
                                      JAMES E. SEIBERT
                                      UNITED STATES MAGISTRATE JUDGE