IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


CHRISTOPHER J. COVEY and
LELA G. COVEY,

        Plaintiffs,

v.                                      Civil Action No. 5:12CV37
                                                    (STAMP)
ASSESSOR OF OHIO COUNTY,
KATHIE HOFFMAN, Head Assessor,
ROY CREWS, Field Deputy,
UNKNOWN ASSESSOR,
OHIO COUNTY SHERIFF,
PATRICK BUTLER, Sheriff,
ALEX ESPEJO, Corporal,
RON WHITE, Deputy,
NELSON CROFT, Lieutenant,
NICHOLE SEIFERT, Officer,
HNK, Unknown Officer,
DLG, Unknown Officer,
OHIO COUNTY ANIMAL SHELTER,
DOUG McCROSKY, Supervisor
and UNKNOWN DOG WARDENS,

        Defendants.


**MEMORANDUM OPINION AND ORDER**
**AFFIRMING AND ADOPTING REPORT AND**
**RECOMMENDATION OF MAGISTRATE JUDGE**


I.  Background


    On October 20, 2011, the pro se[1] plaintiffs filed this civil

rights action against the above-named defendants pursuant to 42

U.S.C. § 1983, in the Circuit Court of Ohio County.  The complaint

argues that the plaintiffs' civil rights, along with a number of

state laws, were violated by the defendants.  The defendants

_____

    [1]"Pro se" describes a person who represents himself in a court
proceeding without the assistance of a lawyer.  Black's Law
Dictionary 1341 (9th ed. 2009).

removed the action to this Court on the basis of federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441(a).[2]

The plaintiffs assert that their claims arise from the following events: On October 21, 2009, defendant Roy Crews ("Crews"), an employee of the Ohio County Assessor's office, entered onto the plaintiffs' property in order to assess it for tax purposes. Following his entrance onto the property, defendant Crews, during his inspection, saw what he believed to be marijuana in the back patio area of the home. After making this discovery, defendant Crews placed a telephone call to inform Patrick Butler of the Ohio County Sheriff's Department of the same.

Based upon the information provided by defendant Crews, the Ohio County Sheriff's Department sent officers Alex Espejo and Robert Manchas to the plaintiffs' home. Upon arrival at the home, the officers knocked on the front door and, receiving no answer, proceeded to the back of the home where they found Mr. Covey and observed the marijuana earlier observed by defendant Crews. The officers also noted the scent of marijuana at that time. Further, Mr. Covey allegedly made admissions regarding drug paraphernalia in

---

[2]The plaintiffs also filed a civil action in this Court, which, aside from the addition of two federal defendants, the federal Drug Enforcement Administration ("DEA"), and DEA Agent Detective Robert L. Manchas, contains the same allegations, based upon the same facts as are raised and alleged in the complaint filed in this civil action. This parallel civil action is Civil Action No. 5:11CV147 in this Court.

the home. Corporal Espejo then left to obtain a warrant to search the house, leaving Deputy Ron White with Mr. Covey.

While Corporal Espejo was obtaining the search warrant for the home, Mrs. Covey returned home and was placed in handcuffs. Following Corporal Espejo's return with the warrant, a search was executed of the home and the plaintiffs were arrested and taken to jail to be booked. Later in the evening, the plaintiffs' son returned home to find Corporal Espejo in the home searching Mrs. Covey's computer. Also while the plaintiffs' son was present, two unnamed officers of the Ohio County Dog Warden arrived and seized the family's raccoon.

After the plaintiffs' complaint was removed to this Court, it was referred to United States Magistrate Judge James E. Seibert for initial review and report and recommendation. All defendants then filed motions to dismiss. Defendants, the Assessor of Ohio County, Patrick Butler, Roy Crews, Nelson Croft, DLG, Alex Espejo, HNK, Kathie Hoffman, Doug McCrosky, Ohio County Animal Shelter, Ohio County Sheriff, Ohio Valley Drug Task Force, Nichole Seifert, Unknown Assessor, Unknown Dog Wardens, and Ron White, filed two joint motions to dismiss, and the Ohio Valley Task Force also filed a separate motion to dismiss. The plaintiffs responded to each of these motions following the issuance of a Roseboro[3] notice, and

---

[3]Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (finding that the court must inform a pro se plaintiff of his right to file material in response to a motion for summary judgment).

also filed a petition to remand, which was fully briefed by the parties.[4]

Magistrate Judge Seibert entered a report and recommendation wherein he recommended that the plaintiffs' federal civil rights claim be dismissed for failure to state a claim, that this Court decline to exercise supplemental jurisdiction over the state law claims raised in the complaint, and that the state law claims be dismissed without prejudice subject to refiling in state court. The magistrate judge further informed the parties that, if they objected to any portion of the report and recommendation, they were required to file written objections within fourteen days after being served with copies of the report. The plaintiffs did not file any objections.[5] For the reasons set forth below, this Court finds that the report and recommendation of the magistrate judge must be affirmed and adopted in its entirety. The plaintiffs' federal civil rights claims are thus dismissed with prejudice, and

_____

[4]Magistrate Judge Seibert properly denied this motion for remand as without merit, as federal question jurisdiction clearly exists in this case as a result of the plaintiffs' § 1983 claims. See 28 U.S.C. §§ 1331 and 1441(a).

[5]As of the date of this memorandum opinion and order, the plaintiffs filed no objections to the report and recommendation entered in this case. However, on January 24, 2013, more than 30 days after the magistrate judge entered his report and recommendation, the defendants filed a response to plaintiffs' objections. As the plaintiffs have not filed any objections in this civil action, this Court finds that this untimely filed response is not relevant to any matters before the Court in this civil action.

the plaintiffs' state law claims are dismissed without prejudice for lack of subject matter jurisdiction.

## II.   Legal Standard

As there were no objections filed to the magistrate judge's recommendation, the findings and recommendation will be upheld unless they are "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A).

## III.   Discussion

The magistrate judge's report and recommendation addresses the plaintiffs' claims individually, rather than the individual motions to dismiss filed by the defendants.  For ease of comparison and review, this Court will conduct its review of the magistrate judge's findings in the same manner.  Counts I, II, IV and V are state law claims, and thus will be addressed following this Court's review of the plaintiffs' federal civil rights claim–Count III.  As noted by the magistrate judge in his report and recommendation, because the complaint filed in this case is nearly identical to the complaint filed in Civil Action No. 5:11CV147, save for the claims against the federal defendants in that case which have been omitted from this case, the following discussion will closely mirror this Court's discussion in its memorandum opinion and order dismissing Civil Action No. 5:11CV147.[6]

---

[6]Although this Court recognizes that this complaint is nearly identical to the complaint in Civil Action No. 5:11CV147, this Court agrees with the magistrate judge that it is preferable to

A.  Count III

Count III raises a 42 U.S.C. § 1983 claim against all defendants.  The count alleges deliberate indifference to the plaintiffs' civil rights in the form of unreasonable search and seizure.

In order to state a claim for violation of the plaintiffs' Fourth Amendment rights against unreasonable search and seizure, the plaintiffs must show first that there was a "search" as that term is defined in the context of the Fourth Amendment.  A Fourth Amendment "search" only occurs when the plaintiffs demonstrate that (1) they had a subjective expectation of privacy in the location of the alleged search and that (2) society is willing to accept that subjective expectation of privacy as a reasonable one.  See Katz v. United States, 389 U.S. 347 (1967).

1.  Tax assessor

The first allegedly unreasonable search asserted by the plaintiffs is the entrance onto the plaintiffs' property by the state tax assessor, namely defendant Roy Crews.  As noted above, defendant Crews came to the plaintiffs' home for the purpose of assessing the value of their property for tax purposes, and upon entering the plaintiffs' backyard, viewed what he believed to be

_____

decide the defendants' motions to dismiss on the merits when possible rather than to strike the entire pleading as redundant pursuant to Federal Rule of Civil Procedure 12(f).  Accordingly, this Court will proceed with resolving the defendants' motions to dismiss on the merits.

marijuana on the plaintiffs' back patio. This discovery prompted him to notify the Ohio County Sheriff's Office of the same.

As the magistrate judge states in his report and recommendation, the tax assessor, in performing a naked eye, ordinary observation of the front and back of the plaintiffs' house for the purposes of assessing its value, did nothing unduly intrusive, and thus did not commit a "search." See Wildgren v. Maple Grove Twp., 429 F.3d 575 (6th Cir. 2005) ("[A] property assessor does not conduct a Fourth Amendment search by entering the curtilage for the tax purpose of naked eye observations of the house's plainly visible exterior attributes and dimension."); Taylor v. Mich. Dep't of Natural Res., 502 F.3d 452, 456-57 (6th Cir. 2007) (Noting the importance of the "methods of observation and purpose of [the entrant's] conduct" in determining whether a search occurred). While this Court does not disagree that the plaintiffs had a subjective expectation of privacy as to defendant Crews' entrance into the backyard of their home, it cannot conclude that the second prong of Katz can be met in this circumstance. As such, this Court finds that the magistrate judge was not clearly erroneous in his conclusion that defendant Crews' activity on the plaintiffs' property did not violate their Fourth Amendment rights.

2. <u>Police officers</u>

The next alleged "search" to which the plaintiffs point occurred when defendant Crews contacted the Ohio County Sheriff's Office and officers were dispatched to the plaintiffs' property to investigate the call. This Court agrees with the magistrate judge's conclusion that this entrance onto the plaintiffs' property was in accordance with the officers' constitutional ability to conduct a "knock and talk." In the United States Court of Appeals for the Fourth Circuit, a "knock and talk," wherein law enforcement officers approach the entrance of a person's home in order to ask questions of occupants, is not a situation which requires a warrant or probable cause to be valid. <u>See United States v. Taylor</u>, 90 F.3d 903, 909 (4th Cir. 1996) (finding that approaching the front door of the defendant's home and knocking was permissible as the defendant's "front entrance was as open to the law enforcement officers as to any delivery person, guest, or other member of the public"). In <u>Davis v. United States</u>, 327 F.2d 301 (9th Cir. 1964), an opinion cited with approval by the Fourth Circuit in <u>Taylor</u>, the Ninth Circuit held that when police officers have reasonable suspicion which would make it reasonable for them to desire to question a person regarding their suspicions, no "right of privacy" is invaded by officers or anyone else walking up to that person's home "with the honest intent of asking questions of the occupant thereof." <u>Id.</u> at 303.

8

In this case, in the criminal complaint, as well as in the plaintiffs' complaint, it is clear that when the officers arrived at the plaintiffs' home in order to conduct a "knock and talk," Mr. Covey was present on the property and was on the back patio, at a workbench. Realizing that Mr. Covey was not inside the house, the officers proceeded to the backyard in order to speak with him there. It was there, once in the backyard speaking with Mr. Covey, that the officers first viewed marijuana on the workbench and on the patio behind the home.

The plaintiffs do not argue, based upon these facts, that the officers' approach to the house could not be considered a valid "knock and talk." Rather, they assert that such a "knock and talk" cannot continue into a person's backyard. As the magistrate judge found, this argument is without merit. In the Fourth Circuit, it has been established that police may proceed into a person's backyard without a warrant "to speak with the homeowner . . . when circumstances indicate that they might find him there." Alvarez v. Montgomery Cnty, 147 F. 3d 354, 356 (4th Cir. 1998); United States v. Bradshaw, 490 F.2d 1097, 1100 (4th Cir. 1974). Accordingly, this Court does not find clear error in the magistrate judge's conclusion that the police were justified in proceeding into the backyard pursuant to a valid knock and talk.

3. <u>Search warrant</u>

As a result of the foregoing, this Court also agrees with the magistrate judge that the search warrant obtained by Corporal Espejo following the valid knock and talk was based upon probable cause, and thus also constitutionally valid. It was after the officers' valid entry into the backyard that officers were able to view what they believed to be marijuana, in plain view on the patio, and to obtain an admission of the same from Mr. Covey.[7] These discoveries while the officers were legally present in the plaintiffs' backyard are sufficient to create probable cause to obtain a search warrant for the house.

The plaintiffs also argue that the actual search warrant obtained was invalid because it was unconstitutionally overbroad. However, the plaintiffs offer little factual basis for this claim. Their arguments in this regard simply state the allegation then support it with quotations and statements from cases finding other warrants to be unconstitutionally overbroad. The only support which the plaintiffs give for their allegation that this particular

_____

[7]This Court is unable to discern from the record whether or not Mr. Covey's admissions prior to the officers' obtaining the search warrant, which admissions are noted in the criminal complaint filed on the record, are disputed. However, it seems clear that the existence of marijuana in view on the patio, and the fact that the scent of marijuana was recognizable in the backyard, are not disputed. Accordingly, this Court finds that probable cause to obtain a search warrant existed regardless of whether Mr. Covey made any type of admissions to the officers.

search warrant did not adequately limit the basis for and bounds of the search warrant. This Court disagrees.

The search warrant obtained by Corporal Espejo, and which was used as the basis to search the plaintiffs' property, specifically provides that the warrant was based upon suspicions that Mr. Covey had engaged in the manufacture, delivery, or possession with intent to deliver marijuana, in violation of the specific West Virginia Code § 60A-4-401(a)(ii). The search warrant also specifically describes the location covered by the search warrant as the plaintiffs' house and surrounding property. The grounds for probable cause are also attached to the search warrant.

Accordingly, the search warrant specifically notes that the limits of the warrant were with regard to suspicions of unlawful manufacture, delivery, or possession with intent to deliver marijuana, and that the physical bounds were within the plaintiffs' property at 222 Castlemans Run Road, Valley Grove, Ohio County, West Virginia. As such, the plaintiffs' claim that the search warrant was invalid is without merit.

4. Dog wardens

Finally, the plaintiffs argue that the dog wardens' seizure of the plaintiffs' raccoon following their arrest constitutes a Fourth Amendment violation. As the magistrate judge noted, it is clear that the dog wardens' actions in this case constituted a search, as they entered the home of the plaintiffs, and that the warrant

obtained by police did not provide for the seizure of the raccoon. Thus, the dog wardens' seizure of the raccoon constituted a warrantless search and seizure. However, as the magistrate judge also asserted, the Fourth Amendment only protects against "unreasonable" warrantless search and seizure. In order to determine whether a warrantless seizure is "unreasonable," a court must weigh "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." United States v. Place, 462 U.S. 696, 703 (1983).

In this particular case, with regard to the plaintiffs' pet raccoon, this Court finds that the magistrate judge was not clearly in error as to his conclusion that the governmental interests in public health and safety, as well as in the care of the raccoon during the plaintiffs' incarceration clearly justify the intrusion of the seizure of the raccoon.

## 5. Allegations against supervisors and entities

Finally, the plaintiffs' claims under Count III against defendants Doug McCrosky, Sheriff Patrick Butler, Kathie Hoffman, the Assessor of Ohio County, the Ohio County Sheriff, and the Ohio County Animal Shelter also must be dismissed. All of these defendants serve in supervisory roles above the above-discussed actors in this case-Doug McCrosky is the supervisor of the Ohio County Animal Shelter, Patrick Butler is the Sheriff of Ohio

12

County, and Kathie Hoffman is the Assessor of Ohio County. As the magistrate judge correctly notes, in a § 1983 claim such as this, none of these supervisors or municipal entities can be held liable under a theory of <u>respondeat superior</u>. However, a supervisor can be held liable if a subordinate's acts which violated a person's constitutional rights were conducted in accordance with an official policy for which the supervisor is responsible, or if the supervisor was aware of the conduct and failed to respond to the point that the failure to respond constitutes "deliberate indifference" to the risk of constitutional violation. <u>Fisher v. Washington Metro. Area Transit Auth.</u>, 690 F.2d 1113 (4th Cir. 1982); <u>Shaw v. Stroud</u>, 13 F.3d 791, 799 (4th Cir. 1994), <u>cert. denied</u>, 513 U.S. 813 (1994).

The magistrate judge found, and this Court agrees, that under the above relevant law, supervisors and governmental entities cannot be found liable when no constitutional violations have been found as to the activities of their subordinates or employees. <u>See Grayson v. Peed</u>, 195 F.3d 692, 697 (4th Cir. 1999) ("As there are no underlying constitutional violations by any individual, there can be no municipal liability."). As such, because this Court found that no constitutional violations occurred at any time with regard to any of the events noted in the plaintiffs' complaint, the supervisors and entities named cannot be held liable under § 1983

as a result of any of those actions or events.  Count III is thus dismissed in its entirety.

C.   Counts I, II, IV, and V

For the reasons explained above, this Court affirms and adopts the magistrate judge's recommendation to dismiss Count III of the plaintiffs' complaint.  The remaining counts–Counts I, II, IV, and V–all present state law causes of action, and no federal claims remain.  As a result, this Court's only basis for subject matter jurisdiction over this case have now been dismissed, and this Court may only exercise continuing jurisdiction based upon the doctrine of supplemental jurisdiction.  <u>See</u> 28 U.S.C. 1367(a).  The determination of whether to continue to exercise supplemental jurisdiction over a case following the dismissal of all federal claims is one reserved to the discretion of the district court.

However, it has been widely determined that, in the interest of comity, federal courts should decline to exercise continuing supplemental jurisdiction over state law claims if federal claims are dismissed early in the litigation of a case.  <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726 (1966).  As this Court agrees with the magistrate judge that the federal claims in this case have been dismissed at a very early stage of the litigation of this matter, this Court will exercise its discretion to decline to exercise supplemental jurisdiction over Counts I, II, IV, and V. This Court will dismiss these claims without prejudice.

IV.   <u>Conclusion</u>

Having reviewed the magistrate judge's report and recommendation for clear error, this Court hereby AFFIRMS and ADOPTS the report and recommendation in its entirety. All pending motions to dismiss (ECF Nos. 4, 6, and 9) are GRANTED AS FRAMED. Count III of the plaintiffs' complaint is DISMISSED WITH PREJUDICE. Counts I, II, IV, and V are DISMISSED WITHOUT PREJUDICE. It is ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

Finally, this Court finds that the plaintiffs were properly advised by the magistrate judge that failure to timely object to the report and recommendation in this action would result in a waiver of appellate rights. Because the plaintiffs have failed to object, they have waived their right to seek appellate review of this matter. <u>See</u> <u>Wright v. Collins</u>, 766 F.2d 841, 844-45 (4th Cir. 1985).

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to the <u>pro se</u> plaintiffs by certified mail and to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:     January 25, 2013


                              /s/ Frederick P. Stamp, Jr.
                              FREDERICK P. STAMP, JR.
                              UNITED STATES DISTRICT JUDGE